UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

OSCAR PEREZ-LOPEZ,

                Plaintiff,

v.

BRUCE BIALOR, MD, MARILYN GARCIA, RN, GLENFORD EDWARDS, LT. JUAN RAMOS, and MDC H.S.A./MDC OFFICERS,

                Defendants.

**MEMORANDUM & ORDER**
20-CV-02518 (HG) (RML)

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff has filed a complaint against several medical and non-medical personnel who worked at the Brooklyn Metropolitan Detention Center (the "MDC") related to the medical treatment that he received while he was incarcerated there. ECF No. 1. Defendants have moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) or, alternatively, for summary judgment pursuant to Rule 56. ECF No. 26. Plaintiff has failed to respond to Defendants' motion despite receiving an extension of his time to do so and receiving notice that Defendants' motion may be treated as a motion for summary judgment. *See* ECF Nos. 29, 30, 33, 35.

    For the reasons set forth below, the Court interprets Plaintiff's complaint as seeking money damages for alleged violations of the Eighth Amendment pursuant to the Supreme Court's decision in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and its progeny. The Court grants summary judgment dismissing those claims because Plaintiff has failed to comply with the administrative exhaustion requirements of the Prison Litigation Reform Act (the "PLRA") and, alternatively, grants Defendants' motion to dismiss because Plaintiff's complaint fails to plead that Defendants violated the Eighth Amendment.

**FACTUAL BACKGROUND**

Plaintiff alleges that he arrived at the MDC on September 14, 2017, and asked a few days later to be assigned to a bottom bunk because of unspecified "medical conditions." ECF No. 1 at 4. He asserts that "[e]veryone" knew that he "belong[ed] [on] a bottom bunk" because of those conditions. *Id.* Regardless of his request and Defendants' alleged knowledge, Plaintiff alleges that he was assigned to a top bunk. *Id.*

Plaintiff further alleges that approximately two weeks after arriving at the MDC, he fell from his top bunk while the facility was on lockdown because of a fight between other prisoners. *Id.* at 3–4. He alleges that he fell because he was experiencing "chest pain." *Id.* at 3. Plaintiff's cell mate pushed an "emergency button" to obtain assistance, but Plaintiff alleges that an unidentified corrections officer informed them that no medical staff were available at the time. *Id.* at 4. Instead, Plaintiff alleges that Defendant Ramos, a corrections officer, stopped by his cell, asked Plaintiff to attempt to walk, and then likewise informed Plaintiff that no medical staff were available. *Id.*

Plaintiff alleges that he visited Defendant Bialor, a doctor, the next day, and that Defendant Bialor and the "medical dep[artment] took all kinds of x-rays and an EKG" but ultimately told Plaintiff that "everything [wa]s OK." *Id.* Plaintiff further alleges that Defendant Bialor told him that he "better don't said [sic]" that he was "injured at this MDC place." *Id.*

Plaintiff alleges that regardless of the medical opinion he received from Defendant Bialor and the medical department, he suffers from "extreme[] pain" in virtually every part of his body. *Id.* He expressly alleges that this pain is the result of being "place[d] on a top bunk." *Id.* at 5. Plaintiff therefore demands $20 million in damages and "medical attention for the rest of [his] life." *Id.* Although Plaintiff refers to Defendants' misconduct as "negligence," he filed his

2

complaint using a pre-printed form designed for *pro se* plaintiffs asserting claims based on constitutional and other federal civil rights pursuant to 42 U.S.C. § 1983. *Id.* at 1, 5.

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1] "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court's obligation "to construe a *pro se* complaint liberally" continues to apply "[e]ven after *Twombly*" established the plausibility standard for assessing pleadings. *Newsome v. Bogan*, 795 F. App'x 72, 72 (2d Cir. 2020) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)). However, "[a]lthough [courts] afford a *pro se* litigant a certain degree of latitude in the sufficiency of his factual allegations, a liberal interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled." *Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) (affirming dismissal of Eighth Amendment claim for inadequate medical care brought by state pretrial detainee).

---

[1] Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

3

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). Although "courts must refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments," even a *pro se* plaintiff must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party." *Saeli v. Chautauqua Cty.*, 36 F.4th 445, 456 (2d Cir. 2022) (emphasis in original) (affirming summary judgment dismissing complaint brought by *pro se* plaintiff for failure to exhaust administrative remedies).

Rule 12(d) authorizes courts to convert motions to dismiss for failure to state a claim to motions for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). The rule requires that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* The

4

Second Circuit has explained that Rule 12(d), therefore, gives courts "only two options" when they are presented with documents outside the complaint on a motion to dismiss: "(1) the court may exclude the additional material and decide the motion on the complaint alone or (2) it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 810–11 (2d Cir. 2019). "[T]he conversion of a Rule 12(b)(6) motion into one for summary judgment is governed by principles of substance rather than form." *Id.* at 811. "[T]he essential inquiry is whether the [nonmovant] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment." *Id.* at 811–12.

## DISCUSSION

### I. Defendants Are Entitled to Summary Judgment Due to Plaintiff's Failure to Exhaust His Administrative Remedies

Defendants gave Plaintiff sufficient notice that the Court might convert their motion to dismiss to a motion for summary judgment based on the extrinsic evidence that Defendants submitted related to whether Plaintiff failed to exhaust his claims. Defendants served their motion papers in May 2022, and their notice of motion indicated that Defendants sought both to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) or, alternatively, pursuant to Rule 56. ECF No. 26. The motion included a statement of material facts, required by the District's Local Civil Rule 56.1, which parties typically serve only when moving for summary judgment. ECF No. 26-1. Defendants simultaneously served on Plaintiff the disclosures to *pro se* parties required by the District's Local Civil Rules 12.1 and 56.2. ECF Nos. 29, 30. These disclosures, respectively, warned Plaintiff that: (i) the Court might convert Defendants' motion to dismiss into a motion for summary judgment because Defendants had submitted documents outside the parties' pleadings in support of the motion, and (ii) Plaintiff may not oppose a summary judgment

5

motion by relying solely on the allegations in his complaint but must instead come forward with evidence rebutting Defendants' assertions of fact. *Id.*

The Court also gave Plaintiff sufficient notice that his claims might be dismissed if he did not respond to Defendants' motion. After Plaintiff failed to file any submission in opposition to Defendants' motion by his original deadline on August 1, 2022, the Court unilaterally extended his deadline until August 31, 2022. ECF No. 33. The Court expressly warned Plaintiff that "**his failure to timely mail his opposition papers may lead the Court to treat Defendants' motion as unopposed and may lead to the dismissal of Plaintiff's case.**" *Id.* (emphasis in original). After Plaintiff failed to file anything by that second deadline, the Court issued an order explaining that it "deem[ed] Defendants' motion to be fully submitted" and that the Court was taking the motion "under advisement." ECF No. 35. In that order, the Court "**reiterate[d] its warning to Plaintiff that his failure to submit opposition papers may lead to the dismissal of his case.**" *Id.* (emphasis in original). In both instances, the Clerk of Court mailed the Court's orders to the prison where Plaintiff is currently incarcerated, and neither of those mailings was returned as undeliverable.

### A. Plaintiff Failed to Exhaust His *Bivens* Claims as Required by the PLRA

Under the circumstances described above, considering Defendants' arguments that Plaintiff's claims should be dismissed on summary judgment for failure to exhaust his administrative remedies is procedurally proper. When converting a motion to dismiss to a motion for summary judgment to address the PLRA's exhaustion requirement, "[d]iscovery is not necessary . . . when the facts regarding plaintiff's efforts at exhaustion are not disputed, and it does not appear that any amount of discovery would change the outcome." *Hall v. Annucci*, No. 19-cv-5521, 2021 WL 4392526, at *10 (S.D.N.Y. Sept. 24, 2021) (converting motion to

6

dismiss to motion for summary judgment but ordering additional discovery about whether state prison personnel improperly advised plaintiff that grievance process did not apply to his medical care). As described in greater detail below, that is exactly the case here because Defendants' extrinsic evidence unambiguously demonstrates Plaintiff's failure to exhaust. Plaintiff's pattern of non-participation in this case also demonstrates that any attempt at allowing him to conduct discovery would be unproductive.

"The PLRA instructs that 'no action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (quoting 42 U.S.C. § 1997e(a)). "Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Id.* Therefore, "[D]efendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Saeli*, 36 F.4th at 453. The Supreme Court has "emphasiz[ed] that the PLRA 'requires proper exhaustion,' 'which means using all steps that the prison grievance system holds out, and doing so *properly* (so that the prison grievance system addresses the issues on the merits).'" *Williams*, 829 F.3d at 122 (quoting in *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006)) (emphasis in original).

The grievance procedures established by the U.S. Bureau of Prisons ("BOP") require that prisoners first attempt informally to resolve any grievances with a facility's staff and, if those attempts fail, to file a written grievance form with the facility within 20 days of the incident that triggered the prisoner's grievance. 28 C.F.R. §§ 542.13, 542.14. If the prisoner is not satisfied with the facility's resolution of the grievance, then the prisoner must send an appeal form to a

7

BOP Regional Director, and must further appeal the Regional Director's response by submitting an appeal to the BOP's General Counsel. 28 C.F.R. § 542.15.

Plaintiff failed to follow this grievance process because, as the records submitted by Defendants show, Plaintiff filed a grievance immediately with a BOP Regional Director, without first submitting a grievance form to the MDC's personnel, and waited approximately eight months before doing so. ECF No. 27 ¶¶ 7–8; ECF No. 27-1 at 5. Defendants' search of the BOP's grievance database has revealed no record of Plaintiff ever submitting an initial grievance to the MDC, *see* ECF No. 27 ¶ 7, and although Plaintiff's complaint attaches numerous grievance forms, they all relate to other incidents that occurred at a different BOP facility to which Plaintiff was subsequently transferred, *see* ECF No. 1. Plaintiff has therefore failed properly to exhaust his claims, and Defendants are entitled to summary judgment dismissing Plaintiff's complaint. *See Lowman v. Baird*, No. 16-cv-6518, 2017 WL 6403519, at *6–7 (S.D.N.Y. Dec. 14, 2017) (granting summary judgment dismissing complaint where plaintiff submitted grievance to BOP Regional Director without first submitting a grievance to his facility).

The Supreme Court and Second Circuit have acknowledged that the PLRA's requirement that administrative remedies be "available" to a plaintiff, *see* 42 U.S.C. § 1997e(a), allows for some exceptions to the exhaustion requirement. *Williams*, 829 F.3d at 123; *Ross v. Blake*, 578 U.S. 632, 643–44 (2016). The Supreme Court has identified only three such exceptions. "First, an administrative remedy may be unavailable when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can

8

discern or navigate it.' Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Williams*, 829 F.3d at 123–124 (quoting *Ross*, 578 U.S. at 643–44). Although Defendants bear the "burden of establishing the existence and applicability of [a] grievance policy," once Defendants have done that, "*[P]laintiff* bears the burden of establishing *de facto* unavailability" of the policy. *Saeli*, 36 F.4th at 453 (emphasis in original).

None of the three exhaustion exceptions applies to Plaintiff's claims. Nothing suggests that the BOP's grievance process is a dead end or was too opaque for Plaintiff to understand because Plaintiff's own complaint attaches several unrelated grievances and responses from BOP officials—thereby demonstrating that Plaintiff knows exactly how to follow the grievance process properly. *See Scott v. Greene*, No. 22-930-cv, 2023 WL 2563896, at *1 (2d Cir. Mar. 20, 2023) (holding that grievance process was not unavailable to plaintiff after taking into account fact that plaintiff had "used [her facility's] grievance procedure several times during the relevant period for issues not related to this case"). Furthermore, Plaintiff's single allegation that Defendant Bialor gave him some sort of vague advice not to file a grievance, *see* ECF No. 1 at 4, does not rise to the level of "machination, misrepresentation, or intimidation" recognized by the Supreme Court in *Ross*, 578 U.S. at 644. "[C]onclusory statements about a MDC staff member's obstruction of [a] plaintiff's utilization of the grievance process are insufficient to raise a genuine dispute of material fact." *Marley v. United States*, No. 18-cv-3495, 2022 WL 1183330, at *4 (E.D.N.Y. Apr. 20, 2022), *report and recommendation adopted in full*, 2022 WL 1720432 (E.D.N.Y. May 27, 2022) (granting summary judgment dismissing *Bivens* claim alleging inadequate medical care).

9

>   B.   **The Statute of Limitations Bars Any Conceivable Claim Under the FTCA**

In deference to Plaintiff's *pro se* status, the Court has considered whether Plaintiff may have intended to assert a medical malpractice or negligence claim against the United States pursuant to the Federal Tort Claims Act ("FTCA"), rather than a *Bivens* claim directly against individual personnel at the MDC. Defendants argue that the Court should consider any such claim under the FTCA to be barred because Plaintiff did not exhaust such a claim by presenting it to the applicable administrative agency, BOP, within the two years required by the FTCA. ECF No. 28 at 17 n.5; *see* 28 U.S.C. § 2401(b) (imposing two-year presentment requirement). However, Defendants acknowledge that Plaintiff filed his grievance regarding his September 2017 incidents with BOP's Regional Director in May 2018, well within the two-year period required by the FTCA, albeit long after the 20-day exhaustion period required for his *Bivens* claims governed by the PLRA. ECF No. 27 ¶ 8.

Since Plaintiff filed this grievance with the Regional Director, the Court cannot rule as a matter of law, based on the information currently available, that Plaintiff's FTCA claims were never exhausted. The Regional Director is the proper person to whom a plaintiff should present tort claims based on actions that occurred while in BOP custody. *See Michel v. United States*, No. 17-cv-1893, 2019 WL 4602828, at *3 (E.D.N.Y. Sept. 23, 2019) (explaining in connection with dismissal of FTCA claims that "a claimant must file an administrative tort claim with the BOP Regional Office where the claim occurred"). Although Defendants' declaration indicates that Plaintiff filed his grievance using a BP-10 form designed for administrative grievances, *see* ECF No. 27 ¶ 8, rather than the "Standard Form 95" used to present FTCA claims, *see* 28 C.F.R. § 14.2(a), the Second Circuit has recently emphasized that a "Form 95 is not the only way to present a claim" under the FTCA, *see Collins v. United States*, 996 F.3d 102, 111 (2d Cir. 2021).

10

Defendants have not provided the Court with a full copy of Plaintiff's grievance—they have provided only summary information from a BOP database—so the Court cannot determine that the information contained in the grievance lacked the details required to present adequately a FTCA claim to BOP. *See Collins*, 996 F.3d at 119 (holding that the FTCA requires notice "with sufficiently specific information as to the basis of the claim, the nature of claimant's injuries, and the amount of damages sought such that the agency can reasonably understand what it must investigate").

Unlike the PLRA's exhaustion requirement, which is an affirmative defense rather than a pleading requirement, "'the burden is on the plaintiff to both plead and prove compliance with the FTCA's statutory requirements,' including exhaustion." *Manchanda v. Lewis*, No. 21-1088-cv, 2021 WL 5986877, at *2 (2d Cir. Dec. 17, 2021) (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)). The Court could therefore dismiss any conceivable FTCA claim contained in Plaintiff's complaint, regardless of the sufficiency of the evidence that Defendants have put forth on summary judgment, because Plaintiff has not pled that he presented a FTCA claim or even an administrative grievance to BOP. *See* ECF No. 1.

However, even if the unknown information in Plaintiff's grievance submitted to BOP's Regional Director amounted to a properly presented FTCA claim, any FTCA claim that Plaintiff had at that time would be barred by the statute of limitations. Any amendment through which Plaintiff might attempt to plead his compliance with the FTCA's presentment requirement would therefore be futile. The database summary that Defendants submitted demonstrates that BOP denied Plaintiff's grievance on May 31, 2018, *see* ECF Nos. 27 ¶ 8 & 27-1 at 5, thereby triggering the start of Plaintiff's six-month deadline to file a FTCA claim in court, *see* 28 U.S.C. § 2401(b) (providing that "[a] tort claim against the United States shall be forever barred . . .

11

unless action is begun within six months after . . . notice of final denial of the claim by the agency to which it was presented"). Plaintiff did not deposit his complaint with his prison mailing system until May 19, 2020, nearly two years after that denial. ECF No. 1 at 5. Such a delay requires dismissal of any FTCA claims. *See Burke v. U.S. Postal Serv.*, No. 19-cv-2539, 2020 WL 9816003, at *5 (E.D.N.Y. Sept. 28, 2020) (dismissing FTCA claims at summary judgment stage because plaintiff failed to sue within six months after receiving denial of claims that had been timely presented to federal agency).

Although "the FTCA's time bars are nonjurisdictional and subject to equitable tolling," the Court declines to toll Plaintiff's potential FTCA claims to render them timely. *United States v. Wong*, 575 U.S. 402, 420 (2015). "[A] litigant is entitled to equitable tolling only if the litigant establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Hardie v. United States*, 859 F. App'x 612, 614 (2d Cir. 2021) (affirming dismissal of FTCA claims that failed to comply with both two-year presentment requirement and six-month suit requirement). Nothing that Plaintiff has submitted to the Court suggests that he was diligently pursuing FTCA claims.

## II. Plaintiff's Complaint Fails to Plead an Eighth Amendment Violation

Even if Plaintiff had properly exhausted his *Bivens* claims, dismissal is warranted pursuant to Rule 12(b)(6) because the allegations in Plaintiff's complaint are insufficient to state an Eighth Amendment violation. As a threshold issue, the Court rejects Defendants' argument that *Bivens* does not authorize an implied cause of action for Plaintiff's claim for deliberate indifference to his medical needs. The Court recognizes that the Supreme Court recently "has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity" and that the Court has "consistently refused to extend *Bivens* to any new context or new category of

defendants." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).  Accordingly, when presented with a *Bivens* claim, the Supreme Court has instructed district courts to "proceed[] in two steps." *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022).  First, a district court must "ask whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the [Supreme] Court has implied a damages action." *Id.*[2]  "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.*

At the first step, the Supreme Court has instructed district courts to consider the following non-exhaustive list of factors to decide whether a *Bivens* claim is new:  "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Ziglar*, 582 U.S. at 140.  The Court also instructed district courts to consider a catchall factor of "the presence of potential special factors that previous *Bivens* cases did not consider." *Id.*

---

[2] The Supreme Court explained in *Egbert* that the three instances in which it had previously recognized a *Bivens* right to pursue a claim for damages related to a constitutional violation involved:  (i) "a cause of action under the Fourth Amendment against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations," *see Egbert*, 142 S. Ct. at 1802 (citing *Bivens*, 403 U.S. 388); (ii) "a former congressional staffer's Fifth Amendment sex-discrimination claim," *see Egbert*, 142 S. Ct. at 1802 (citing *Davis v. Passman*, 442 U.S. 228, (1979)); and (iii) "a federal prisoner's inadequate-care claim under the Eighth Amendment," *see Egbert*, 142 S. Ct. at 1802 (citing *Carlson v. Green*, 446 U.S. 14 (1980)).

If those factors lead a district court to determine that a plaintiff's *Bivens* claim is new, then the district court must decide whether "special factors counselling hesitation" weigh against allowing a *Bivens* remedy for the new type of claim. *Id.* at 136. The Supreme Court "has not defined the phrase 'special factors counselling hesitation.'" *Id.* However, a district court "cannot afford a plaintiff a *Bivens* remedy" "if there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate"—"or even if there is the *potential* for such consequences." *Egbert*, 142 S. Ct. at 1805 (emphasis in original).

Plaintiff's claims for inadequate medical care do not assert a new type of *Bivens* claim, so the Court declines to dismiss Plaintiff's claim as unwarranted under *Bivens* and its progeny. The Supreme Court in *Egbert* expressly acknowledged that it had previously recognized a damages remedy under *Bivens* to vindicate "a federal prisoner's inadequate-care claim under the Eighth Amendment." *Egbert*, 142 S. Ct. at 1802 (citing *Carlson v. Green*, 446 U.S. 14 (1980)). Consistent with that prior recognition, at least one judge in this District has held—after the Supreme Court's decisions in both *Abbasi* and *Egbert*—that a plaintiff's challenge that his "inadequate medical treatment" rose to the level of an "Eighth Amendment deliberate indifference claim" still suffices to invoke a *Bivens* remedy. *Mendoza v. Edge*, No. 20-cv-3032, 2022 WL 3097377, at *5 (E.D.N.Y. July 13, 2022) (dismissing various alleged constitutional violations as not affording a *Bivens* remedy but dismissing on the merits Eighth Amendment *Bivens* claim related to alleged lack of medical treatment for COVID-19).

Nevertheless, even though Plaintiff may invoke *Bivens* as a remedy to demand damages for Defendants' alleged Eighth Amendment violations, he has not alleged adequately that Defendants violated the Eighth Amendment. Although the MDC predominantly houses detainees who have been charged with a federal crime but not yet convicted, Plaintiff was

14

temporarily housed at the MDC while serving a 300-month sentence for conspiring to distribute cocaine.[3]  The Court therefore assesses Plaintiff's claim for inadequate medical care according to the standard that applies to Eighth Amendment violations asserted by convicted prisoners, rather than the Fifth Amendment due process standard that applies to federal detainees.  *See Darby*, 14 F.4th at 128 (explaining that "the due process rights of a person detained but not convicted are at least as great as the Eighth Amendment protections available to a convicted prisoner").

"To state an Eighth Amendment claim against a prison official for providing inadequate medical care, an inmate must allege facts showing the offending official's 'deliberate indifference to a prisoner's serious medical needs.'" *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).  "A deliberate indifference claim has two elements.  The first, which is objective, requires the inmate to show that he was 'actually deprived of adequate medical care' by an official's failure 'to take reasonable measures in response to a sufficiently serious medical condition.'" *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)).  "The second element, which is subjective, requires the inmate to demonstrate that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously disregarded 'an

---

[3]      Although Defendants provided the Court with this information as part of a declaration in support of their request for summary judgment, *see* ECF No. 27 ¶ 2, the Court has independently corroborated the information by consulting Plaintiff's criminal docket maintained by the U.S. District Court for the Southern District of Alabama.  That docket, which is related to a criminal defendant who shares Plaintiff's exact name and unique registration number assigned by BOP, demonstrates that Defendant was convicted following a jury trial and sentenced in May 2007.  *See* Judgment, *United States v. Perez-Lopez*, No. 04-cr-229 (S.D. Ala. filed May 31, 2007) (ECF No. 66).  The Court may take judicial notice of dockets from other courts' proceedings because they are public records, including when deciding whether to dismiss a complaint.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

15

excessive risk to inmate health or safety.'" *Id.* (quoting *Salahuddin*, 467 F.3d at 280 and *Hill*, 657 F.3d at 122).

Plaintiff's allegations that Defendants violated the Eighth Amendment by disregarding his request for a bottom bunk when he arrived at the MDC fail to state a claim. The complaint does not identify the medical condition that supposedly warranted Plaintiff's receiving a bottom bunk, so Plaintiff has failed to demonstrate that any condition he had was sufficiently serious. *See Irizarry v. Manhattan Corr. Ctr.*, No. 21-cv-5170, 2022 WL 375360, at *4 (S.D.N.Y. Feb. 8, 2022) (dismissing Eighth Amendment claim asserted by pretrial detainee because "[p]laintiff's allegations in the amended complaint regarding his medical issues are too vague to show that his medical needs were objectively sufficiently serious"); *Gunn v. McNeil*, No. 19-cv-11821, 2020 WL 7647422, at *7 (S.D.N.Y. Dec. 23, 2020) (dismissing Eighth Amendment claim asserted by convicted state prisoner who "fail[ed] to identify the pre-existing medical conditions for which he was denied medication"). Even assuming that Plaintiff's unspecified condition was sufficiently serious, Plaintiff has not adequately alleged that Defendants' failure to provide a bottom bunk rose to the level of subjective recklessness necessary to assert an Eighth Amendment claim. *See Lacen v. Ayemong*, No. 21-1964-cv, 2022 WL 14177191, at *1 (2d Cir. Oct. 25, 2022) (affirming dismissal because prison medical personnel were not deliberately indifferent in declining plaintiff's request to "provid[e] an additional mattress").

Plaintiff also fails adequately to allege that Defendant Ramos—and potentially other, unidentified BOP personnel—violated his Eighth Amendment rights by not immediately procuring medical assistance after Plaintiff fell from his top bunk. Even if Plaintiff suffered from a sufficiently serious condition, a delay in treatment "may not violate the Eighth Amendment if the lapse does not cause any further harm beyond that which would occur even

16

with complete medical attention." *Mendoza*, 2022 WL 3097377, at *6 (dismissing Eighth Amendment claim). Plaintiff's complaint fails to allege the objective severity resulting from a 24-hour delay, due to an alleged lockdown, in receiving a medical appointment, during which he was eventually advised that "everything [wa]s OK." *See* ECF No. 1 at 4. Even if the harm caused by the delay were sufficiently serious, Plaintiff has failed to demonstrate that this short delay rises to the level of deliberate indifference. *See Holloway v. Toulon*, No. 21-cv-5011, 2022 WL 836924, at *7 (E.D.N.Y. Mar. 21, 2022) (dismissing Eighth Amendment claim based on "alleged three- or four-day delay in sending [p]laintiff to the hospital for X-rays").

Finally, Plaintiff fails to allege that once he received medical treatment from Defendant Bialor and other members of the MDC's medical staff, the treatment was constitutionally deficient. As with the other points in time at which Plaintiff alleges that he was denied adequate medical care, Plaintiff has failed to allege that the injuries resulting from his fall from his top bunk were sufficiently serious to satisfy the objective prong of an Eighth Amendment claim. *See Lopez v. Phillips*, No. 18-cv-3605, 2019 WL 2504097, at *9 (E.D.N.Y. June 17, 2019) (dismissing pretrial detainee's Eighth Amendment claim because alleged pain caused by "slip and fall" was not sufficiently serious). Plaintiff has also failed to allege that the MDC's medical personnel were deliberately indifferent in selecting the diagnostic tests that they performed or advising Plaintiff about the extent of his injuries. Although Plaintiff obviously disagrees with the assessments of the MDC's medical staff, his complaint includes no facts sufficient to "raise[] an inference that [their] decisions were motivated by anything other than [their] medical judgment." *Thomas*, 832 F. App'x at 93 (affirming dismissal). "That [Plaintiff] feels something more should have been done to treat his injuries is not a sufficient basis for a deliberate

17

indifference claim." *Gonzalez v. Vargas*, No. 15-cv-6035, 2017 WL 1082460, at *4 (S.D.N.Y. Mar. 22, 2017) (dismissing Eighth Amendment claims).

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) and further GRANTS Defendants' alternative request, made in that same motion, for summary judgment dismissing Plaintiff's complaint pursuant to Rule 56. *See* ECF No. 26. The Clerk of Court is respectfully directed to enter judgment, to mail a copy of the judgment and this order to the *pro se* Plaintiff, and to close this case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

On or before April 12, 2023, Defendants' counsel is directed to send Plaintiff this order and copies of the unpublished decisions cited herein, in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), and to file a declaration confirming that service.

SO ORDERED.

                                                    */s/ Hector Gonzalez*
                                                    HECTOR GONZALEZ
                                                    United States District Judge

Dated: Brooklyn, New York
        March 29, 2023